UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL P. KIELY,

                            Plaintiff,

                                       CIVIL CASE NO. 01-40149

v.

HEARTLAND REHABILITATION SERVICES,     HONORABLE PAUL V. GADOLA
INC., et al.,                                      U.S. DISTRICT COURT

                          Defendants.
_____/

## ORDER ON DEFENDANTS' MOTIONS IN LIMINE

Before the Court are Defendants' four motions in limine.  They seek to preclude

1)  the written report and oral testimony of Dr. Cohn;
2)  the report and testimony of Plaintiff's expert economist, Dr. Spurr;
3)  the testimony of Amy Grappin; and
4)  the testimony of Lynda Peringian.

For the reasons that follow, the Court will deny the first three motions.  As for the fourth

motion, which seeks to preclude testimony of Plaintiff's expert, Lynda Peringian, the Court will

preclude Ms. Peringian from testifying as an expert witness but allow her to testify as a lay witness.

**I.**     **Dr. Cohn**

Plaintiff notified Defendants of his grievance for wrongful termination on May 7, 1999.

During discussions of possible reinstatement, Plaintiff's counsel notified Defendants that he had

undergone surgery to remove cataracts from his eyes.  According to Defendants, they hired Dr.

Cohn, an ophthalmologist, to conduct an examination of Plaintiff to assess the extent of his visual

impairment.  The examination was performed on September 19, 2000.  Dr. Cohn prepared a report

in connection with the examination.  The parties were unable to come to an agreement, and Plaintiff

filed his complaint on May 17, 2001.

Defendants now seek to preclude the report and testimony of Dr. Cohn on the grounds that

a)  Dr. Cohn's examination and report consist of statements made during the course of
    settlement negotiations and are therefore inadmissible under F.R.E. 408;

b)  Plaintiff should be precluded from admitting Dr. Cohn's report or testimony because the
    manner in which Plaintiff obtained the report violated the subpoena procedures of Fed.
    R. Civ. P. 45;

c)  Plaintiff should be precluded from admitting Dr. Cohn's report or testimony because he
    failed to include it in his initial disclosure as required by Fed. R. Civ. P. 26(A)(1)(B);

d)  Plaintiff is not permitted discovery of Dr. Cohn's report because there are no exceptional
    circumstances for discovery of the facts known or opinions held by Dr. Cohn, as required
    by Fed. R. Civ. P. 26(b)(4)(B);

e)  Dr. Cohn's report is not relevant under F.R.E. 402 or may lead to jury confusion under
    F.R.E. 403.

Each ground will be addressed in turn.

**A)      F.R.E. 408**

Defendants contend that Dr. Cohn's examination and report consist of statements made

during the course of settlement negotiations and are thus inadmissible under F.R.E. 408, which

provides, in relevant part:

> Evidence of (1) furnishing or offering or promising to furnish, or (2)
> accepting or offering or promising to accept, a valuable consideration in
> compromising or attempting to compromise a claim which was disputed as to either
> validity or amount, is not admissible to prove liability for or invalidity of the claim
> or its amount.  Evidence of conduct or statements made in compromise negotiations
> is likewise not admissible.

2

F.R.E. 408.  Defendants rely on Rule 408 and the Fifth Circuit case of *Ramada Dev. Co. v. Rauch*, 644 F.2d 1097 (5th Cir. 1981) which held that an architect's report prepared in order to identify possible defects which could then be used as a basis for settlement negotiations was inadmissible under F.R.E. 408.  *Ramada*, 644 F.2d at 1107.  The Fifth Circuit stated that but for the settlement negotiations, the architect's report would not have been produced and therefore the report was "a collection of statements made in the course of an effort to compromise."  *Id*.  Defendants state that Dr. Cohn's examination was conducted and his report was prepared solely for the purpose of settlement negotiations, namely possible reinstatement.  Therefore, Defendants argue, the report should be considered "a collection of statements made in the course of an effort to compromise," and Dr. Cohn should be precluding from testifying about the report or the examination.

This Court, however, will not follow *Ramada*.  Although *Ramada* is still good law and the Sixth Circuit has cited it, the Sixth Cicuit has not followed its holding with regard to precluding such reports.  Other circuits have likewise refrained from following *Ramada's* holding as to expert reports, including the Fifth Circuit.  To follow *Ramada* would be to allow a party to refrain from disclosing expert reports and make expert testimony inadmissible simply by retaining experts for the purported purpose of settlement negotiations.  Furthermore, F.R.E. 408 provides that "[t]his rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations."   Yet, such a rule as *Ramada's* excludes evidence on the basis of its genesis, not on its nature as "evidence otherwise discoverable."

Even though F.R.E. 408 describes its exclusion in broad terms, "[e]vidence of conduct or

3

statements made in the compromise negotiations is likewise not admissible," it is not intended to exclude all evidence of such conduct or statements. First, the rule states that evidence of conduct or statements made in compromise negotiations is "likewise" inadmissible, meaning that the evidence "is not admissible to prove liability for or invalidity of the claim or its amount." F.R.E. 408. Second, not all statements are excludable. For example, evidence of wrongs perpetrated during settlement negotiations are admissible. *Uforma/Shelby Bus. Forms v. NLRB*, 111 F.3d 1284, 1294 (6th Cir. 1997). Instead,

> Rule 408 has greater flexibility than that suggested by [the defendant]. It also provides that "this rule does not require exclusion when the evidence [of settlement negotiations] is offered for another purpose . . . ." For example, evidence concerning negotiations may be admitted to establish admissions of fact rather than "hypothetical or provisional concessions conditioned upon the settlement's completion.

*Urico v. Parnell Oil Co.*, 708 F.2d 852, 854 (1st Cir. 1983) (quoting *Hiram Ricker & Sons v. Students International Meditation Society*, 501 F.2d 550, 553 (1st Cir. 1974)). The protection provided by Rule 408 is meant to allow open discussion:

> Parties must be able to abandon their adversarial tendencies to some degree. They must be able to make hypothetical concessions, offer creative quid pro quos, and generally make statements that would otherwise belie their litigation efforts. Without a privilege, parties would more often forego negotiations for the relative formality of trial. Then, the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost.

*Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 980 (6th Cir. 2003). Rule 408 was not meant to shelter expert reports or testimony.

      **B)**     **Fed. R. Civ. P. 45's subpoena procedures.**

Defendants maintain that Plaintiff should be precluded from admitting Dr. Cohn's report or testimony because the manner in which Plaintiff obtained the report violated the subpoena procedures of Fed. R. Civ. P. 45. Rule 45, which governs subpoenas, provides, in pertinent part, that "[p]rior notice of any commanded production of documents and things or inspection of premises before trial shall be served on each party in the manner prescribed by Rule 5(b)." Fed. R. Civ. P. 45(b)(1). Plaintiff subpoenaed Dr. Cohn to produce "any and all records, correspondence, reports, and any modifications thereto that may have been requested by Karen B. Berkery, attorney for the Defendants, pursuant to their request for examination of my client." Cohn Mot., Ex. F. The Subpoena was issued on May 31, 2001, shortly after Plaintiff filed his complaint in state court on May 17, 2001. No notice of the subpoena was sent to Defendants who first learned that Plaintiff possessed the report when Plaintiff used it to examine another witness in a deposition on February 15, 2002.

Defendants attempt to characterize Plaintiff's subpoena as a surreptitious attempt to obtain Dr. Cohn's records despite being notified by Defendants that they considered the report protected by F.R.E. 408 and Fed. R. Civ. P. 26. This characterization is inaccurate. Plaintiff was notified of Defendants' reliance on F.R.E. 408 and Fed. R. Civ. P. 45 after he notified Defendants of the taking of Dr. Cohn's deposition. This occurred well after Plaintiff had subpoenaed Dr. Cohn. After becoming aware of Defendants' objections to the deposition, Plaintiff withdrew his request to depose Dr. Cohn.

Defendants state that if given prior notice they would have moved to quash the subpoena under Fed. R. Civ. P. 45(c)(3)(A) and since they were not given this opportunity, they have been

5

unfairly prejudiced.  However, Rule 45(c)(3)(A) allows a party to quash a subpoena only under certain circumstances, and Defendants have not shown that any one of those circumstances applies.

Defendants request that Plaintiff should by punished for his violation of the subpoena procedures of Rule 45 by precluding him from introducing Dr. Cohn's report or testimony.  The penalty of exclusion has been used in the past for such violations of Rule 45's subpoena procedures, such as in *Mann v. University of Cincinnati*, 824 F. Supp. 1190, 1199 (S.D. Ohio 1993).  Yet, in that instance, the penalty was imposed for the defendant's conduct in violating the privacy rights of the plaintiff through a threatening subpoena.  Here, it is Plaintiff's counsel who subpoenaed Plaintiff's medical records and the subpoena is in no way threatening.

Finally, the subpoena was issued through the Michigan State Court before the case was removed by Defendants, and not through this Court.  Therefore, the subpoena procedures of Federal Rule of Civil Procedure 45 were not in effect at that time.

### C)      Fed. R. Civ. P. 26(A)(1)(B)'s Initial Disclosure requirement

Defendants contend that Plaintiff  should be precluded from admitting Dr. Cohn's report or testimony because he failed to include it in his initial disclosure as required by Fed. R. Civ. P. 26(a)(1)(B).  Rule 26 provides:

> a party must, without awaiting a discovery request, provide to other parties. . . a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.

Fed. R. Civ. P. 26(a)(1).  Defendants request that Plaintiff be sanctioned for this failure in accordance with Fed. R. Civ. P. 37(c)(1) which provides that "[a] party that without substantial

justification fails to disclose information required by Rule 26(a) . . . , is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed."

Dr. Cohn's report, though, was initially "in the possession, custody, or control" of the Defendants, and so is not the sort of evidence contemplated by Fed. R. Civ. P. 26(A)(1)(B), and even if it is of that sort, the failure to disclose it is harmless because Defendants have been aware of the report and its contents from its creation.  Fed. R. Civ. P. 37(c)(1).

**D)       Fed. R. Civ. P. 26(b)(4)(B)'s limitation**

Defendants argue that Plaintiff was not permitted discovery of Dr. Cohn's report because there are no exceptional circumstances for discovery of the facts known or opinions held by Dr. Cohn, as required by Fed. R. Civ. P. 26(b)(4)(B), which provides that

> A  party may, through interrogatories or by deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial and who is not expected to be called as a witness at trial, only as provided in Rule 35(b) or upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(B).

Yet, Dr. Cohn is not a non-testifying expert.  Plaintiff included him on his witness list and has indicated that he intends to call him at trial.  Thus, Dr. Cohn is not an expert "who is not expected to be called as a witness at trial," and Plaintiff is not precluded from discovering the facts he knows or the opinions he holds.

**E)       F.R.E. 402 and 403**

7

Defendants argue that Dr. Cohn's report is not relevant under F.R.E. 402 because the examination happened two years post termination and for the purpose of determining whether or not Plaintiff's vision had improved after his cataract surgery.  As such, Defendants argue, it is not relevant to whether Plaintiff posed a health and safety risk during his employment.  Defendants argue that Dr. Cohn's statement that Plaintiff could satisfy his job requirements if given a "cooperative staff/management/patient work environment, adequate lighting and mutual agreement with fair consideration" is too vague to be considered relevant.  Defendants also argue that even if it is relevant, it should be excluded on the grounds of prejudice and jury confusion under F.R.E. 403.

F.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Plaintiff's condition is a fact that is of consequence to the determination of the action, and Dr. Cohn's report and testimony will have a tendency to make that fact more or less probable.  Therefore, it is admissible under 402.  As for the preclusive effect of F.R.E. 403, Dr. Cohn's testimony can clear up any ambiguity or confusion in the report.

   **F)**   **Conclusion**

For the above reasons, Defendants' motion in limine to preclude the written report and oral testimony of Dr. Cohn will be denied.

**II.**  **Plaintiff's Expert Economist**

Defendants seek to have the report and testimony of Plaintiff's economic expert, Dr. Spurr, excluded.  Dr. Spurr has been retained by Plaintiff to provide an opinion and report regarding

8

Plaintiff's economic damages.  Defendants maintain that Dr. Spurr's report is irrelevant under F.R.E. 402 as well as confusing, misleading and prejudicial under F.R.E. 403.

### A)      F.R.E. 402

Defendants argue that Dr. Spurr's report is irrelevant because it did not take into account Social Security benefits that Plaintiff has and is currently receiving.  M.C.L. § 600.6303 requires the Court to reduce a plaintiff's award by any amount that has been paid or is payable by a collateral source.  The Michigan Court of Appeals has held that Social Security benefits are collateral source that must be taken into account.  *Haberkorn v. Chrysler Corp.*, 210 Mich. App. 354 (1995); *Tranker v. Figgie Int'l*, 231 Mich. App. 115 (1998).  Dr. Spurr's entire report and testimony need not be precluded because it has failed to take into account Plaintiff's Social Security benefits.  The evidence is still relevant despite the omission.  The benefits can easily be taken into account by the Court or by jury instruction.

Defendants argue that Dr. Spurr's report is irrelevant because it estimates that Plaintiff will remain permanently unemployed, even though he was 39 at the time of his termination and has a four year college degree in business, is a physical therapy assistant and is a certified massage therapist.  On the contrary, Dr. Spurr's report states that "we do not know exactly how long the plaintiff will be unemployed."  Spurr Mot., Ex. B, at 2.  Rather than conclude that Plaintiff will remain permanently unemployed, Dr. Spurr examined three scenarios: that Plaintiff will remain unemployed another 5 years, another 10 years, and permanently.  *Id*.

Defendants argue that Dr. Spurr's report is also irrelevant because his  conclusion—that no one would hire Plaintiff due to Defendants' firing him as a safety risk and Plaintiff's subsequent

9

lawsuit—is unsupported by data or any study.  An expert, however, does not need a study and data to support every conclusion he makes.  At times, he may rely on his general knowledge and education in his chosen field, as Dr. Spurr appears to have done here.  *See United States v. Frazier*, 387 F.3d 1244, 1297-98 (11th Cir. 2004) (noting that expert may rely on deductive reasoning and that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience.") (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 156 (1999)).

Defendants argue that Dr. Spurr's report is irrelevant because he did not take into account the Medicare benefits Plaintiff is currently receiving when he calculated Plaintiff's damages due to the loss of his fringe benefits.  Nevertheless, Dr. Spurr's deposition indicates that Plaintiff's fringe benefits were valued at 15.7% of his total wages and medical benefits were only estimated at 4.9%. Dr. Spurr indicated that 15.7% was a modest estimate.  Spurr Mot., Ex. D, at 24.  Dr. Spurr also indicated that Medicare benefits might not alter this estimation because they might not overlap with any benefits Plaintiff had lost and that the common collateral source rule does not include Medicare benefits.  *Id*. at 24-25.  Given the minimal nature of this discrepancy, the omission of Plaintiff's Medicare benefits does not render Dr. Spurr's report irrelevant.

Defendant further argues that the report is irrelevant because it calculated Plaintiff's work life expectancy using tables for someone who is active in the workforce, yet Plaintiff is not currently active in the workforce.  Plaintiff, however, was active in the workforce at the time of his allegedly wrongful termination and the purpose of Dr. Spurr's report is to determine the extent of Plaintiff's damages which result from his termination.

10

Defendants argue that Dr. Spurr's report is irrelevant because the calculation of Plaintiff's work life expectancy was not made for a blind or disabled person. Even so, Dr. Spurr's deposition indicates that the tables used to calculate Plaintiff's work life expectancy take into account an individual's health and the assumption that if a disability precludes certain employment an individual will seek other suitable employment. Spurr Mot., Ex. D, at 30-31.

Finally, Defendants argue that Dr. Spurr's report is irrelevant because it only includes economic damages if Plaintiff were to remain unemployed for five years, ten years, or for the rest of his work life expectancy. Yet, argue Defendants, Plaintiff was employed via a one-year contract and pursuant to *Kocenda v Archdiocese of Detroit*, 204 Mich. App. 659, 665; 516 N.W.2d 132 (1994), he is only entitled to damages through the term of his contract. *Kocenda* held that "[i]n view of the specific language that there was no tenure, that the contracts were terminable by either party upon thirty days' notice, and that plaintiffs were entitled to thirty days of pay following notice of termination, plaintiffs could not reasonably expect that they would be entitled to compensation for any future wage loss even if they were terminated without just cause." *Id*. at 665. Defendants, however, have already previously indicated, in the briefing of their summary judgment motion, that it was their common practice to automatically renew Plaintiff's contract absent reasons to the contrary. Thus, Plaintiff could reasonably expect from that practice that he would be employed past the date of his contract and that he was, in effect, entitled to compensation for any future wage loss. Furthermore, it is untrue, as Defendants maintain, that the report only includes damages for the three periods of possible unemployment  mentioned above. Dr. Spurr's report itemizes Plaintiff's damages for each and every year. It provides totals after year 5, year 10, and at the conclusion of

11

Plaintiff's life expectancy simply for the sake of convenience.  Spurr Mot., Ex. B, at 8.

Defendants' arguments, whether taken singularly or together, fail to show that Dr. Spurr's report is irrelevant.

### A)   F.R.E. 403

Defendants argue that Dr. Spurr's report should be excluded because it is more prejudice than probative.  They argue that evidence will be unfairly prejudicial if the danger exists that marginally probative evidence will be given undue weight by the jury.  Defendants argue that Dr. Spurr's report is only marginally probative because Plaintiff still has many years before retirement, and front pay awards covering such a long period of time are inherently speculative.  Defendants argue that Plaintiff still has the opportunity to mitigate his damages and the market for physical therapy assistants is very good and is expect to grow faster than average.

Dr. Spurr's report, however, is not marginally probative.   It appears to be a thorough examination of Plaintiff's possible damages estimated for each year he remains unemployed.  Moreover, the fact that it includes damages estimates for a period of unemployment extending until the end of his work life expectancy does not decrease its probative value or make it more prejudicial because the report includes estimates for each and every year up to his work life expectancy.  The report does not state that he will remain unemployed for the remainder of his workable life.  Rather, it merely states what his damages will be if he does.  A jury will understand this.

### C)   Conclusion

For the above reasons, the Court will deny Defendants' motion in limine to preclude the report and testimony of Plaintiff's expert economist.

12

**III.     Amy Grappin**

Defendants seek to have the testimony of Amy Grappin excluded under F.R.E. 402 or 403. Amy Grappin worked with Plaintiff at Physicians Physical Therapy Services (PPTS) between July 1992 and July 1994. She supervised physical therapists who were responsible for overseeing physical therapy assistants, such as Plaintiff. She is expected to testify favorably as to Plaintiff's ability to perform his job functions at that time and that at no time did his visual impairments become a safety risk.

Defendants argue that how well Plaintiff functioned while working for PPTS is irrelevant to whether he posed a safety risk when he was terminated by Defendants four years later, in July of 1998, principally because Plaintiff suffers from degenerative conditions that progressively diminish Plaintiff's eye sight and because he developed cataracts during his employment with Defendants. Defendants further argue that Plaintiff's working environment at PPTS was significantly different than the working environment at Defendants' facility, which was a skilled nursing facility.

While these considerations may cast doubt on the weight of Amy Grappin's testimony, they do not affect its admissibility. It is relevant under 401 because it has a tendency to make the fact of Plaintiff's disability more or less probable, and is therefore admissible under 402. Moreover, any considerations of unfair prejudice, confusion of the issues, etc., do not "substantially outweigh" its probative value.

Accordingly, the Court will deny Defendants' motion in limine to preclude the testimony of Amy Grappin.

**IV.     Lynda Peringian**

13

Defendants seek to have the testimony of Lynda Peringian excluded for Plaintiff's failure to provide a written expert report as required by Fed. R. Civ. P. 26(a)(2)(B), and failing to meet the relevancy and reliability requirements of F.R.E. 702 and *Daubert v. Merrel Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993). Plaintiff identifies Lynda Peringian on his witness list as an expert witness and describes her in the following manner:

> This witness, who is a certified Personnel Consultant, was the Employment Representative who placed the Plaintiff in the employ of the Defendants and sought to assist him in securing subsequent employment following his termination from Georgian Bloomfield and will also testify as to the marketplace for Physical Therapists and/or Physical Therapist Assistants in the metropolitan Detroit area and as to the healthcare market in general.

Pl. 2dAmend. to Wit. List., at 4.

Defendants state that Plaintiff never produced an expert report by Ms. Peringian as required by Fed. R. Civ. P. 26(a)(2)(B), which provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(C) requires that an expert report be disclosed 90 days prior to trial, absent direction by the Court otherwise. Failure to properly disclose an expert report may result in the expert's testimony being excluded from trial. *See* Fed. R. Civ. P. 37(c)(1)

14

("A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.").

Furthermore F.R.E. 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

F.R.E. 702 is a codification of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny.  The Supreme Court said of *Daubert*:

> *Daubert's* general holding—setting forth the trial judg''s general "gatekeeping" obligation—applies not only to testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *See* Fed. Rule Evid. 702. We also conclude that a trial court may consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability. But, as the Court stated in *Daubert*, the test of reliability is "flexible," and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination. *See General Electric Co. v. Joiner*, 522 U.S. 136, 143, 139 L. Ed. 2d 508, 118 S. Ct. 512 (1997) (courts of appeals are to apply "abuse of discretion" standard when reviewing district court's reliability determination).

*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141-142 (1999).

Ms. Peringian has a B.S. in dietetics and a M.S. in foods and nutrition.  She is a Certified Personnel Consultant and was certified in 1980.  She authored a book entitled "Physical and

Occupational Therapist Job Search Handbook" in 1989.  She has never testified as an expert witness.
Ms. Peringian initially placed Plaintiff with Defendants and tried to help Plaintiff obtain
employment after his termination.

Defendants submit that Ms. Peringian has no specialized training or expertise and that she
simply works as a placement recruiter.  She maintains no data, statistics or other information
regarding open positions in the Detroit area for physical therapy assistants and that she has rendered
no opinions in this regard.  Furthermore, she has no opinions or information regarding physical
therapy assistants who are disabled.  She appears to be relying solely on a handful of articles she has
read regarding the subject of physical therapy assistant positions in the marketplace.  *See* Peringian
Mot., Ex. D.  Ms. Peringian was unable to testify as to the Detroit marketplace for physical therapy
assistants at the time of her deposition on April 18, 2002.

Ms. Peringian appears to lack the qualifications required by F.R.E. 702 and *Daubert v.
Merrel Dow Pharmaceutical, Inc.*, 509 U.S. 579 (1993). The testimony expected of Ms. Peringian
does not appear to be based upon sufficient facts or data or the product of reliable principles and
methods.  F.R.E. 702.  It appears that Ms. Peringian is merely going to relate what she has read in
certain articles.  This alone cannot qualify her to testify as an expert.

Ms. Peringian will also be precluded from testifying as an expert under Fed. R. Civ. P.
37(c)(1) for Plaintiff's failure to file a written report as required by Fed. R. Civ. P. 26(a)(2)(C).

Ms. Peringian, however, was responsible for placing Plaintiff with Defendants and for
helping him with his effort to obtain subsequent employment.  Regarding these facts, Ms. Peringian
will be allowed to testify as a lay witness.  *See* F.R.E. 701 ("If the witness is not testifying as an

16

expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.").

Hence, the Court will grant Defendants' motion in limine to preclude the testimony of Lynda Peringian in part by precluding her from testifying as an expert witness, while allowing  her to testify as a lay witness.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendants' motion in limine to preclude the written report and oral testimony of Dr. Cohn [docket entry 93] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion in limine to preclude the report and testimony of Plaintiff's expert economist, Dr. Spurr [docket entry 96] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion in limine to preclude the testimony of Amy Grappin [docket entry 95] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion in limine to preclude the testimony of Lynda Peringian [docket entry 94] is **GRANTED in part**.  Lynda Peringian is precluded from testifying as an expert witness, but not as a lay witness.

**SO ORDERED.**


Dated: ___October 17, 2005___                    s/Paul V. Gadola_____
                                                 HONORABLE PAUL V. GADOLA
                                                 UNITED STATES DISTRICT JUDGE


17

Certificate of Service

I hereby certify that on __October 18, 2005__ , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system and hand delivered a copy to all counsel of record.

s/Ruth A. Brissaud

Ruth A. Brissaud, Case Manager

(810) 341-7845